UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| ORVAL D. WINTERBOER, Personally and As Personal Representative of the Estate of INEZ M. WINTERBOER, | ) ) ) ) | CIV. 12-4049-KES |
| Plaintiff, | ) ) | ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY |
| vs. | ) ) | JUDGMENT AND GRANTING PLAINTIFF'S MOTION TO COMPEL |
| EDGEWOOD SIOUX FALLS SENIOR LIVING, LLC, | ) ) ) | DISCOVERY |
| Defendant. | ) | |

Defendant, Edgewood Sioux Falls Senior Living, LLC, moves the court for summary judgment on plaintiff Orval Winterboer's punitive damages claim. Winterboer resists the motion and moves to authorize and compel discovery related to punitive damages. For the following reasons, the court denies Edgewood's motion for partial summary judgment and grants Winterboer's motion for discovery.

**BACKGROUND**

The facts, viewed in the light most favorable to Winterboer, the nonmoving party on the partial summary judgment motion, are as follows:

Orval and Inez Winterboer were married in 1948. In 2008, Inez began having difficulty with memory and was diagnosed with dementia. Inez was placed in Edgewood Vista, an assisted living facility specializing in the care of

dementia patients, in August 2009. Inez lived in the C pod at Edgewood's facility in Sioux Falls.

In July 2009, Edgewood admitted A.F., another dementia patient. Shortly after he arrived at Edgewood, A.F. began to have increasing behavioral issues. A.F.'s problematic behavior included inappropriate sexual behavior directed at female residents, wandering into pods and individual rooms he was not supposed to enter, going through other residents' personal belongings, and shouting at and mimicking staff and other residents. It also included, on several occasions, physical altercations with staff such as grabbing, shoving, or shaking, resulting on one occasion in a worker's compensation claim. A.F. was emotionally volatile and could be difficult to redirect or calm down when upset. Edgewood, in concert with A.F.'s physician, tried unsuccessfully to manage A.F.'s problems with medication. Staff and management at Edgewood knew of A.F.'s difficulties, his behavior, and the physical altercations with staff.

On April 2, 2010, A.F. entered the C pod, an area to which he was not supposed to have access. Once in the C pod, A.F. entered Inez's room and laid down in her bed. When Inez found A.F. in her bed, she asked him to leave, and he grabbed her. Staff heard the commotion and intervened. One staff member kicked A.F. in the groin to separate him from Inez. During the encounter in her room, Inez was pushed to the ground. The day after the incident in her room, Inez was hospitalized and treated for a fractured thumb and a hip injury, which

ultimately required hip surgery. Edgewood discharged A.F. following the April 2, 2010, incident.

On March 20, 2012, Winterboer filed a complaint alleging negligence and loss of consortium and seeking punitive damages. Docket 1. Winterboer alleged that Edgewood was negligent in failing to recognize a pattern of escalating and dangerous behavior by A.F., in failing to restrain or control A.F., and in failing to provide for the safety of its vulnerable residents, including Inez. Additionally, Winterboer asserted a claim for punitive damages. *Id.* Edgewood denied those allegations. Docket 6. Following the commencement of this suit, Inez passed away on June 18, 2012.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment on all or part of a claim is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must present admissible evidence showing there is no dispute of material fact or that the nonmoving party has not presented admissible evidence to support an element of the case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of*

*Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

Summary judgment is not appropriate if there is a dispute about a material fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

## DISCUSSION

Because federal jurisdiction in this action is based on diversity, the court applies South Dakota substantive law. *Hammonds v. Hartford Fire Ins. Co.*, 501 F.3d 991, 996 n.6 (8th Cir. 2007) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)) ("We apply South Dakota substantive law because this diversity action was brought in the District of South Dakota, and the district court sitting in diversity applies the substantive law of the state in which it is located.").

## I.   **Punitive damages**

Under South Dakota law, punitive damages may not be recovered unless expressly authorized by statute. SDCL 21-1-4. Relevant South Dakota law states that:

> In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, . . . the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

4

SDCL 21-3-2. To survive a summary judgment motion, a plaintiff must prove to the court by clear and convincing evidence that a reasonable basis exists upon which a jury could award punitive damages. *Dahl v. Sittner*, 474 N.W.2d 897, 902 (S.D. 1991); *see also Selle v. Tozser*, 786 N.W.2d 748, 757 (S.D. 2010) (reiterating that the clear and convincing evidence of a reasonable basis standard is a preliminary threshold lower than the standard required at trial).

In his brief, Winterboer relies on a presumed malice theory to support his claim for punitive damages. "Actual malice is a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will towards that person. . . . Presumed, legal malice, on the other hand, is malice which the law infers from or imputes to certain acts." *Dahl*, 474 N.W.2d at 900 (internal citations omitted). A showing of either type of malice is sufficient to support punitive damages. *Bertelsen v. Allstate Ins. Co.*, 833 N.W.2d 545, 555 (S.D. 2013).

" 'A claim for presumed malice can be shown by demonstrating a disregard for the rights of others.' " *Selle*, 786 N.W.2d at 757-58 (citing *Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752, 761 (S.D. 1994)). Presumed malice may be inferred when a party acts willfully or wantonly and injures another. *Bertelsen*, 833 N.W.2d at 555 (quoting *Selle*, 786 N.W.2d at 757). With respect to willful and wanton misconduct, the South Dakota Supreme Court has stated that:

There must be facts that would show that defendant intentionally did something . . . which he should not have done or intentionally failed to do something which he should have done under the circumstances that it can be said that he consciously realized that his conduct would in all probability, as distinguished from possibility, produce the precise result which it did produce and would bring harm to the plaintiff.

*Berry v. Risdall*, 576 N.W.2d 1, 9 (S.D. 1998) (quoting *Tranby v. Brodock*, 348 N.W.2d 458, 461 (S.D. 1984)). Whether a defendant's conduct is willful and wanton is determined by an objective standard, rather than the defendant's subjective state of mind. *Id.*

Leading up to March 2010, A.F. had shown increasing behavioral difficulties. *See* Docket 28-2 at 9. On January 1, 2010, A.F. became agitated and pushed a staff member against a table. Docket 28-10 at 5. On March 11, 2010, A.F. grabbed a staff member by the wrist and would not let go and shoved a chair into a staff member. Docket 28-2 at 9. On March 13, 2010, A.F. tried to tip a staff member, Glenda Schroedermeier, out of her chair, and then grabbed her by the shoulders and shook her hard enough to cause injury. Docket 28-4 at 3-4. Katherine Pfeifle, designated as an expert witness for Winterboer, stated that from September 18, 2009, through April 2, 2010, Edgewood staff documented twenty-four behavioral incidents involving A.F. Docket 28-9 at 19. She further testified that A.F. began to exhibit inappropriate behavior in September 2009 and that his behavior became "totally out of control" on January 1, 2010. *Id.* at 9. Pfeifle also testified that, in her opinion,

A.F. should have been transferred out of Edgewood by March 11, 2010. *Id.* at
12.

Edgewood knew that A.F. would wander into other residential pods if the
doors were not kept properly secured. *See* Docket 28-4 at 6. Although
Edgewood staff knew that A.F. was not supposed to get into the C pod, the door
to C pod was not always locked, and Edgewood sometimes let residents wander
between pods. *Compare* Docket 28-2 at 11, 15 (stating that A.F. could "wander"
into other pods as long as he wasn't upsetting anyone) *with* Docket 28-2 at 2-3
(stating that C pod was supposed to be locked at all times because it provided
access to the main entrance and posed a high flight risk). The door into the C
pod was not a self-closing or automatically latching door. Docket 28-3 at 3.

Winterboer stated that on three occasions while he was visiting Inez, A.F.
wandered into the C pod and peered into Inez's room, prompting Winterboer to
tell A.F. he was not allowed to be in Inez's room. Winterboer testified that on
one of those occasions, A.F. came "way in" and that "I thought I was going to
have a problem, but he left." Docket 28-1 at 6.

Edgewood argues that those facts do not establish presumed malice.
Edgewood cites, among other authority, this court's decisions in *Nissen v.
Johnson*, Civ. No. 09-4166-KES, 2011 WL 4832561 (D.S.D. Oct. 12, 2011),
*DeNeui v. Wellman*, Civ. No. 07-4172-KES, 2009 WL 4847086 (D.S.D. Dec. 9,
2009), and *Benson v. Giordano*, Civ. No. 05-4088-KES, 2008 WL 2390835
(D.S.D. June 9, 2008), for the proposition that courts applying South Dakota

7

law on punitive damages should grant summary judgment unless the plaintiff can show an intent to cause the exact harm in the exact manner alleged in the complaint. Docket 22 at 3-6 ("Under South Dakota law, for punitive damages to be awarded the evidence must show that the defendant's mental state or intention was to cause the victim injury or harm in the exact manner alleged in the lawsuit.").

First, if the court were to accept Edgewood's proposed standard requiring an intent to harm Inez, the presumed malice theory of punitive damages would virtually disappear. The availability of a presumed malice theory evaluated by an objective standard is intended to serve as an alternative to showing a defendant's actual, affirmative intent to cause harm. *See Bertelsen v. Allstate Ins. Co.,* 833 N.W.2d 545, 555 (S.D. 2013) (holding that proof of either actual malice or presumed malice is sufficient, and that presumed malice does not require a desire or intent to cause injury).

Second, the South Dakota Supreme Court allowed a claim for punitive damages to proceed without a specific intended victim under a presumed malice theory in a case involving driving under the influence of alcohol. *Flockhart v. Wyant*, 467 N.W.2d 473 (S.D. 1991). In that case, the court held that the defendant's consumption of enough alcohol to raise her blood alcohol level to 0.30 percent before driving fifty miles on the highway, combined with her awareness of the risks her conduct created based on prior drunk-driving classes and in-patient alcohol treatment programs, supported a finding that the

8

defendant "evidenced a conscious disregard for the rights of *all motorists on our highways.*" *Id.* at 478 (emphasis added). In *Flockhart*, the court did not rely on evidence that the defendant affirmatively intended to cause an accident by driving under the influence of alcohol, nor did it rely on evidence that the defendant specifically targeted the victim. Therefore, behavior that creates a substantially certain and known risk of an injurious outcome, even if that risk is shared among an indefinite and unidentified group, can support a claim for punitive damages. Accordingly, Winterboer does not need to prove that Edgewood knew or intended that Inez herself would be injured. Rather, Winterboer only needs to demonstrate that Edgewood consciously realized that in all probability, its acts or omissions would result in a violent confrontation between a resident and A.F.

Winterboer has pleaded facts[1] and introduced admissible evidence to show that (1) A.F.'s behavior had been deteriorating over time and was becoming increasingly aggressive and violent in the months leading up to Inez's

---

[1] Edgewood contends in its reply brief that Winterboer has not pleaded facts sufficient to state a claim under the heightened pleading standard imposed on actions for fraud or mistake by Rule 9(b) of the Federal Rules of Civil Procedure. Docket 29 at 2. Arguments raised for the first time in reply briefs should not be considered because the opposing party has had no opportunity to respond. *See Johnson v. Berry*, 171 F. Supp. 2d 985, 990 n.3 (E.D. Mo. 2001). Regardless, Rule 9(b) states that malice may be alleged generally. Even if malice had to be pleaded specifically, Winterboer pleaded sufficient specific facts supporting his presumed malice theory. *See* Compl. ¶¶ 10-12, Docket 1 at 2 (alleging that Edgewood was aware of the danger posed by A.F. and failed to take corrective action before the incident on April 2, 2010).

injury; (2) A.F. was known to wander into the C pod and into Inez's room; (3) A.F. had a preoccupation with female residents; and (4) Edgewood was aware of A.F.'s behavior. Additionally, Edgewood is a facility specializing in the care of elderly residents with dementia, and it is aware of the behavioral challenges and risks associated with a violent resident. *See* Docket 28-2 at 4-5 (outlining Edgewood's policy regarding dismissal of residents who become aggressive). According to Pfeifle, Edgewood "literally had a ticking time bomb with [A.F.] . . . he was inappropriate in that environment, and he should have been discharged because he was just waiting to blow." Docket 28-9 at 14-15. Edgewood's knowledge of A.F.'s increasingly violent behavior and his attacks on staff members creates a reasonable basis for a jury to find that Edgewood consciously disregarded a known risk that violent harm would, in all probability, occur to a resident unless Edgewood discharged A.F., that Edgewood failed to act under those circumstances, and that such harm did occur.[2]

---

[2] Edgewood argues in its reply brief that because Winterboer has not presented any expert testimony that Inez's injuries were caused by the incident with A.F., Winterboer has not demonstrated causation. Docket 29 at 7-8; *see also Schaffer v. Edward D. Jones & Co.*, 521 N.W.2d 921, 928 (S.D. 1994) (holding that punitive damages must be based on an underlying claim). First, as previously noted, new arguments in reply briefs should not be considered because the opposing party has not had an opportunity to respond. *See Johnson v. Berry*, 171 F. Supp. 2d at 990 n.3. Second, Edgewood has only moved for summary judgment on Winterboer's claim for punitive damages, and has not moved to dismiss or moved for summary judgment on Winterboer's underlying negligence claim. Because no challenge to the sufficiency of the underlying negligence claim is properly before the court at this time, the court

## II.   Discovery

South Dakota law states that a court must find, after a hearing, by clear and convincing evidence that there is a reasonable basis for punitive damages before any discovery related to punitive damages may occur. SDCL 21-1-4.1. But that statute, as it relates to discovery, "is not applied by federal courts sitting in diversity" because it is purely procedural and conflicts with the federal rules of evidence. *Burke v. Ability Ins. Co.*, 291 F.R.D. 343, 350 (D.S.D. 2013) (citing *Houwman v. Gaiser*, Civ. No. 10-4125-KES, 2011 WL 4345236, at *10 (D.S.D. Sept. 15, 2011)). "[SDCL 21-1-4.1] does not alter the standard of proof required to recover on a punitive damages claim. At trial, a plaintiff must still demonstrate by a preponderance of the evidence that he or she is entitled to punitive damages. . . . It is a procedural statute." *Dahl v. Sittner*, 474 N.W.2d 897, 902 (S.D. 1991) (internal citation omitted).

The scope of civil discovery is governed by Federal Rule of Civil Procedure 26, which provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably

---

will not grant summary judgment on Winterboer's punitive damages claim based on an alleged flaw with the underlying claim.

> calculated to lead to the discovery of admissible evidence. All
> discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1). Discovery under Rule 26(b) is extremely broad. 8

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2007

(3d ed.).

A party seeking discovery must make a threshold showing of relevance.

*See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). After the

party requesting discovery has met its initial burden, the party resisting

discovery must provide specific, nonconclusory reasons why the requested

discovery is not relevant or otherwise should not be allowed. *See Burke*, 291

F.R.D. at 349 (citing *Cincinnati Ins. Co. v. Fine Home Managers, Inc.*, Civ. 09-

234, 2010 WL 2990118, at *1 (E.D. Mo. July 27, 2010)).

Winterboer seeks to compel discovery related to Edgewood's financial

condition.[3] Item three requests that Edgewood "[l]ist all cash on hand, bank

accounts, savings accounts, IRA accounts, saving certificates, stocks, bonds,

securities or any other such investments of any kind as to which you are the

owner or part owner, or in which you claim any interest." Docket 28-14 at 2.

Item four asks Edgewood to "[l]ist all real estate owned by you or in which you

---

[3] Winterboer also seeks the court's permission to commence discovery on
punitive damages under SDCL 21-1-4.1. Because that statute is purely
procedural with respect to discovery and is not applied by a federal court
sitting in diversity, Winterboer does not need authorization to commence
discovery into punitive damages. Therefore, the court will construe
Winterboer's motion, at Docket 24, as a motion to compel only.

claim any interest . . . ." *Id.* at 3. Item five asks Edgewood to state "your current net worth, including but not limited to your gross income and expenses, net income or deficit, net worth and total indebtedness for the past 30 months." *Id.* at 4. Item six requests that Edgewood produce "any financial statements, including any statements showing profit, loss, and income for the period from 2010 to the present." *Id.* Edgewood responded to items three through six by stating:

> Objection. This Interrogatory/Request for Production is objected to insofar as it seeks information which is not relevant or reasonably calculated to lead to the discovery of relevant evidence. The reasons and legal grounds for this objection have been set forth by Defendant in its Motion for Partial Summary Judgment on Punitive Damages.

*Id.* at 2-4.

As a threshold matter, Winterboer asserts that because he is asserting a claim for punitive damages, financial discovery is relevant and admissible. Docket 26 at 12. Winterboer cites *Schaffer v. Edward D. Jones & Co.*, 521 N.W.2d 921 (S.D. 1994), for the rule that "where the plaintiff is entitled to exemplary damages, evidence of defendant's pecuniary circumstances is admissible." *Id.* at 929; *see also Flockhart*, 467 N.W.2d at 479 (stating that a defendant's financial condition has a bearing upon punitive damage awards). Edgewood relies solely on its objection that, since Winterboer's punitive damages claim should not proceed, any discovery relevant only to punitive damages should not be had. Docket 30 at 3-4.

13

In light of the court's decision to deny Edgewood's motion for summary judgment on Winterboer's claim for punitive damages, Winterboer has made a threshold showing of relevance with respect to the discovery sought. Edgewood has not provided any additional specific reasons that would limit the availability of otherwise relevant evidence under Rule 26(b)'s broad standard. Therefore, the court grants Winterboer's motion to compel discovery with respect to items three through six, inclusive, in Winterboer's second set of interrogatories and request for production of documents.

Rule 37 requires a court to award a movant's reasonable expenses if a motion to compel is granted, after providing a reasonable opportunity to be heard. Fed. R. Civ. P. 37(a)(5)(A). The court must not order payment of expenses if the movant filed the motion before conferring in good faith to resolve the dispute, if the nondisclosure or objection was justified, or if other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). Because the parties have not had an opportunity to be heard on the issue of expenses, the court will reserve ruling on any expense award in connection with Winterboer's motion to compel.

## CONCLUSION

Punitive damages may be awarded under South Dakota law when a defendant has acted with a conscious realization that its conduct would in all probability result in a particular harm. Winterboer has introduced clear and convincing evidence that a reasonable basis exists upon which a jury could, at

14

trial, find that Winterboer is entitled to punitive damages. Based on the court's denial of Edgewood's motion for partial summary judgment, discovery into information relevant to punitive damages is appropriate. Accordingly, it is

ORDERED that defendant Edgewood Sioux Falls Senior Living, LLC's motion for partial summary judgment (Docket 19) is denied.

IT IS FURTHER ORDERED that plaintiff Orval Winterboer's motion to compel discovery (Docket 24) is granted. The deadline for submission of all materials related to an award of expenses for the motion to compel is **January 30, 2014.**

Dated January 2, 2014.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

15